**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| Melissa Crook,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>Creston Community School District, Board of Directors of the Creston Community School District, Don Gee, in his individual and official capacities as President of the Board of Directors of the Creston Community School District, and Deron Stender, in his individual and official capacities as Superintendent of the Creston Community School District<br><br>　　　　Defendants. | NO. _____<br><br>**COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, PERMANENT INJUNCTION AND DECLARATORY RELIEF** |

　　　　Plaintiff Melisa Crook, through her counsel, hereby files this Complaint against Creston Community School District; Board of Directors of Creston Community School District; Don Gee, in his individual and official capacities as President of the Board of Directors of Creston Community School District; and Deron Stender, in his individual and official capacities as Superintendent of the Creston Community School District.

**INTRODUCTION**

　　　　1.　　Melisa Crook is a non-probationary High School English Teacher employed by the Creston Community School District. Since September 11, 2025, Crook has been subjected to retaliation, and is now threatened with the termination of her continuing teaching contract, because of a private, off-duty comment on Facebook. Her comment was made in response to a family member's post about the death of the controversial public figure, Charlie Kirk, a subject

1

of general public interest which has captivated both traditional and social media outlets.

2. Late in the evening on September 10, 2025, Crook responded to a Facebook post by a family member related to Charlie Kirk's death earlier that day. At her home, on her personal time, and using her personal Facebook account, Crook wrote, "He is a terrible human being…terrible. I do not wish death on anyone, but he (sic) him not being here is a blessing."

3. Crook's comments were statements of opinion made as a private citizen on a matter of public concern, from her personal Facebook account. Her comments did not address matters related to her employment or job duties and she did not purport to speak as an employee of the Creston Community School District. Crook's comment was and is protected by the First Amendment of the U.S. Constitution.

4. The asserted basis for the recommendation to terminate Crook's continuing teaching contract is that her protected comment on Facebook is contrary to the vague and overbroad policies adopted and applied by the Board of Directors of the Creston Community School District.

5. This action concerns the violation of Crook's First Amendment rights by Defendants, who have placed her on leave, barred her from teaching, and now threaten the termination of her continuing teaching contract.

## JURISDICTION AND VENUE

6. This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331 and 1343, because this action is brought under 42 U.S.C. § 1983.

7. Venue is proper under 28 U.S.C. § 1391 because Defendants reside in this district, have their principal places of business in this district, and the acts and omissions giving rise to Plaintiff's claims have occurred in, and continue to occur in, this district.

## PARTIES

8. Plaintiff Melisa Crook is a non-probationary High School English Teacher employed by the Creston Community School District. Declaration of Melisa Crook, Ex. A.

9. Defendant Deron Stender is the Superintendent of the Creston Community School District and is sued in his official and individual capacities.

10. Defendant Don Gee is the President of the Board of Directors of the Creston Community School District and is sued in his official and individual capacities.

11. Defendant Creston Community School District is a body politic, organized and existing pursuant to Iowa Code Ch. 274, et seq.

12. Defendant Board of Directors of the Creston Community School District is the five-member governing body of the Creston Community School District, pursuant to Iowa Code Ch. 274 and Iowa Code Ch. 279.

## FACTS

13. Plaintiff Melisa Crook (hereinafter "Crook") was hired by the Creston Community School District (hereinafter, "District") on May 18, 2022, to serve as a teacher beginning on September 20, 2022. She has been employed since that time under a continuing teaching contract, issued pursuant to Iowa Code Ch. 279. Crook's 2025-2026 Teaching Contract, Ex. B.

14. For the last four school years, Crook has also held annual contracts to perform the extracurricular duties of the Pepper Coach, a position leading the District's dance team. Crook's 2025-2026 Extracurricular Contract, Ex. C.

15. Crook was previously employed by the District as a Mentoring/Success Coordinator from August 2008 through June 2011. She resigned that position to obtain her teaching certification. She accepted her first position as a licensed teacher at East Union

Community School District, where she was employed from August 2014 through May 2020. She left her employment with East Union Community School District to accept a teaching position with the District.

16. Deron Stender, the District's Superintendent (hereinafter, "Superintendent"), is the "chief executive officer" of the Board of Directors of the District pursuant to Board Policy 302.4. Board Policies, Ex. D, p. 16. Under Policy 302.4, the Board has delegated to the Superintendent "the authority to implement board policy." The Superintendent is also responsible for interpreting Board policy and all state and federal laws applicable to the education program, including the supervision and discipline of employees. The Superintendent issued a Notice of Recommendation to Terminate Crook's continuing teaching contract, and provided notice to the Board, pursuant to Iowa Code sections 279.15-16. Notice to Recommendation to Terminate, Ex. E.

17. Defendant Creston Community School District Board of Directors (hereinafter, "Board") has the authority to accept or reject a Notice of Recommendation to Terminate issued by the Superintendent. *See* Agenda of Board of Directors of Creston Community School District, 09/30/2025, Ex. F. If such a notice is accepted by the Board, it is required by Iowa Code sections 279.15-16 to hold a termination hearing before terminating the continuing teaching contract of a non-probationary teacher.

18. On September 10, 2025, controversial, right-leaning political activist, Charlie Kirk, was killed by gun shot as he spoke at a public event at Utah Valley University.

19. Traditional media outlets and social media platforms were deluged with news of the event, the life and work of Kirk, and the status of the manhunt for his killer. Both traditional and social media sources included substantial content on the controversial positions and

statements made by Kirk during his life, as well as contrary positions of those individuals with alternate and even conflicting viewpoints. Kirk's positions and statements were controversial during his life, and after his death.

20. The evening of September 10, 2025, Crook opened her personal Facebook account and saw a post by one of her family members. In response to the family member's post about Charlie Kirk, Crook left a comment, as set forth in Par. 2 herein. Shortly thereafter, Crook went to sleep.

21. At 9:03 P.M. on September 10, 2025, the right-leading news outlet, The Iowa Standard, reported on Crook's comment. The media outlet identified Crook by name and as a teacher working for the District. The Iowa Standard Posts, Ex. G, p. 1. The post stated, "Unbelievably, this is a third Iowa teacher who has allegedly made such a comment regarding Charlie Kirk's assassination. This teacher works in the Creston School District . . . ." *Id.*.

22. At 9:16 P.M. on September 10, 2025, The Iowa Standard reported a statement attributed to the District, which stated in part: "I want to take a moment to address a recent post that has come to my attention. Please know that I am fully aware of the situation, and I want to assure you that the content of that post does not reflect the values, beliefs, or opinions of our district." With the post, Crook's comment was included. *Id.* at p. 2.

23. When Crook awoke in the early morning of September 11, 2025, she noticed her comment had been perceived in a way she did not anticipate and immediately clarified in the feed that she did "[n]ot wish anyone death" and apologized. Crook Apologies, Ex. N. By 11:30 AM, Crook issued a more extensive post on her own Facebook page:

> I want to clarify a statement I made yesterday. I do NOT condone violence or the killing of people you disagree with politically or otherwise. That was never my intent. That is not who I am, nor what I believe. I believe strongly in the freedom of speech which

> also means I can disagree. I do not treat others poorly or wish them any harm because we do not agree. I am actually very open and accepting of different people with different ideas.
>
> The point I was trying to make is that he has marginalized a lot of powerless people, creating polarized political discourse. I believe all people have the right to their own beliefs, including me.
>
> I am sorry I have offended people in this community, believing that I condone killing others. I did not think he should be killed. After further review, I should have thought more about how I chose to post my thoughts, how it would sound. I take responsibility for the poor wording of my post.

*Id.*

24. Republican political figures denounced speech of educators who were critical of Charlie Kirk and his work and called for their immediate termination. On September 11, 2025, 12:31 P.M., Iowa House Speaker Pat Grassley posted on Facebook:

> I have been made aware of social media posts by teachers in Iowa praising the assassination of Charlie Kirk. This hate has no place in our state, and certainly does not belong in our schools. My expectation is that each school district will follow the proper protocol to investigate these posts and reprimand the posters appropriately. Individuals with this depravity cannot continue to hold a position with any level of influence over our children. If appropriate action is not taken, you can trust that the Iowa House Government Oversight Committee will address this issue and take action to root out this hate from our schools.

Grassley Post, 09/11/2025, Ex. H.

25. On September 11, 2025, the Superintendent called Crook to an investigatory meeting around 2:30 P.M. He asked her multiple times about her meaning and intent in using the term "blessing." At the conclusion of the meeting, the Superintendent placed Crook on administrative leave pending the outcome of the investigation. Declaration of Melisa Crook, Ex. A. Crook was prohibited from coming on school property or attending school-related events and she was not allowed to contact staff, students or their families.

26. On September 12, 2025, 10:37 A.M., the Superintendent released a message to parents, which was picked up by a local media outlet, stating in part, "I am writing to provide an update regarding a current personnel matter in the District. Please know that we are carefully reviewing the situation in accordance with Board policy and applicable laws . . . ." KSIB Radio Post, 09/12/2025, Ex I.

27. On September 12, 2025, 12:48 P.M., The Iowa Standard reposted a strident statement by Iowa House Representative Steve Holt: "Let's be clear. The right of free speech does not mean there will not be consequence to words spoken." The Iowa Standard Posts, Ex. G, p. 3.

28. On September 14, 2025, 6:27 P.M., in another statement picked up by local media, the Superintendent addressed "Families and Community Members," stating in part, " . . . I want to be clear: personal views have no place in the instruction of our children." He also noted the law enforcement presence at school was a "precautionary measure." Creston News Post, Ex. K.

29. On September 15, 2025, Crook was called to a second meeting with the Superintendent. She had not received any new information from the District except those statements released to the public. The Superintendent reported the investigation had concluded. In his comments at the meeting, as well as in the District's investigative report, the Superintendent claimed Crook's comment on Facebook "resulted in [his] office receiving more than 111 emails and 140 calls, with the vast majority of them asking for [Crook's] termination or requesting to have their children removed from [her] classroom." The report stated that Crook's comment "resulted in the need to increase law enforcement presence out of fear for our students, staff, and school safety." Investigative Report, Ex. J.

30. Focus on educators and public servants continued in traditional and social media,

7

largely from conservative outlets. *See e.g.*, Stender Posts, Ex. G, p. 4. On September 15, 2025, 5:00 P.M., The Iowa Standard posted a photo of a Wartburg College professor, Brian Birgen, identifying him by name, profession, and employer, and stating the professor "has been labeling Charlie Kirk as a 'racist' since Kirk's assassination last week." The Iowa Standard Posts, Ex. G, p. 5. Albeit a private-sector employee, this was another educator thrust into the outlet's narrative.

31. On September 17, 2025, 1:04 P.M., The Iowa Standard reposted a statement from "a follower," which states in part: "Teachers and others aren't just celebrating Kirk's murder. They are celebrating a school shooting, which is why the teachers should be removed." The Iowa Standard Posts, Ex. G, p. 6. A few days later, on September 22, 2025, 6:52 PM, The Iowa Standard reported the posts of Birgen's spouse, Wartburg College professor Mariah Birgen. The Iowa Standard Posts, Ex. G, p. 7.

32. On September 17, 2025, the U.S. Education Secretary Linda McMahon posted a video on X, stating in part, "Alarmingly, many of these advocates of political violence are teachers, professors and administrators at our schools and universities, leaders who are entrusted with shaping the character of the next generation and the ideas that affect us all." McMahon went on, "This is further evidence of the profound crisis in our classrooms and on our campuses." *Educators fired after posting about Charlie Kirk allege in lawsuits that their free speech rights were violated*, ABC News, at https://abcnews.go.com/US/educators-fired-after-charlie-kirk-posts-allege-free/story?id=125853309, ABC News Article, Ex. L, p. 6.

33. On September 23, 2025, the Superintendent delivered to Crook a Notice of Recommendation to Terminate Contract. Declaration of Melisa Crook, Ex. A; Notice of Recommendation to Terminate Contract, Ex. E. The Notice lists nine reasons for just cause to terminate Crook, all of which related exclusively and directly to her private speech on a matter

of public concern. The Notice states, "[y]our post was publicly available and generated hundreds of complaints, including many requests from parents for you not to be their children's teacher, and resulted in threats to safety of students and staff, causing a significant and adverse impact on District operations and the educational process."

34. On September 25, 2025, Crook's union representative, Matt Butler (hereinafter, "Butler"), went to the Creston Police Department and Union County Sheriff's Office to obtain a copy of any law enforcement report related to any increased presence of law enforcement at the District on September 11, 2025, and thereafter. Declaration of Matt Butler, Ex. M. The dispatcher was unable to find any report related to the District and called the Union County Sheriff and the District's Student Resource Officer on the phone for additional information. Both officers showed up several minutes later to speak with Butler. The Sheriff stated to the union representative that his office received only one call related to any comment by a teacher and that was early in the morning on September 11, 2025. The call related to the East Union Community School District, Crook's former employer. The Sheriff confirmed that no report was ever filed as a result of the call. The Sheriff indicated that he later received a request to contact the Superintendent and when he did so, the Superintendent informed him that there had been a rumor among students of possible violence toward the school because of a teacher's post. The Superintendent informed the Sheriff that the District investigated the rumor, and it *was not credible*, but wanted a law enforcement presence at the school. The Sheriff further stated to Butler that they increased their presence out of "an abundance of caution" and "because you never know."

35. In the days and weeks following September 11, 2025, Butler spoke with other employees of the District who stated there was little to no disruption to their work or the

educational environment due to Crook's comment. *Id*. More than one employee noted that any disruption was caused by a lack of coverage for the work of the English department, and students asking when Ms. Crook would return because they were experiencing her absence as a teacher and dance coach. Several employees noted the presence of law enforcement on campus as the only event akin to disruption and questioned the need for such presence given they were informed there was no actual threat.

36. On September 28, 2025, Crook requested a hearing before the Board. Declaration of Melisa Crook, Ex. A; Request for Hearing, Ex. O.

37. On September 30, 2025, as required by Iowa Code section 279.15, the Superintendent delivered his Recommendation to the Board at a special meeting. Agenda of Board of Directors of Creston Community School District, 09/30/2025, Ex. F.

38. A hearing before the Board is now imminent. Iowa Code section 279.15 requires the Board to hold a hearing not less than 20 days and not more than 40 days from the date of the filing of Crook's request. On October 6, 2025, the Board issued a Notice of Private Hearing for October 21, 2025. Notice of Private Hearing, 10/06/2025, Ex. P.

## COUNT I

### Violation of Crook's First Amendment Rights

39. Paragraphs 1 – 27 are incorporated by reference as if set forth fully herein.

40. The First Amendment of the Constitution of the United States gives Crook, like every other person in the United States, the right to freedom of speech.

41. Crook's Facebook comment is classic, protected, personal and political speech.

42. The First Amendment protects Crook from discrimination, adverse action, retaliation, and similar punitive conduct by the state, or a governmental entity, like the District,

the Board, its President, Don Gee (hereinafter, "President"), and its agent, the Superintendent.

43. The Notice of Recommendation to Terminate Contract asserts that Crook violated District policies through her exercise of her First Amendment rights. The policies of the District, as written and as applied, violate the Constitutional rights of Crook in the instant circumstances. Board Policies 401.14, 404, 404.1R1, and 404.1R2, Ex. D.

44. The Notice of Recommendation to Terminate Contract attacks Crook's exercise of her First Amendment rights and uses her speech as the reason for the termination of her employment.

45. The Superintendent has made at least one Facebook post agreeing with Charlie Kirk. Stender Posts, Ex. Q, p. 10.

46. The Superintendent and the President have made at least one Facebook post or comment agreeing with Florida Governor Ron DeSantis asserting that in Florida, individuals have the right to hit other people with their cars. Gee Posts, Ex. R, p. 81 (including Stender's "like").

47. The Superintendent has made political posts on a Twitter account he also used for school purposes including content supporting President Trump and other Republican political figures. *See generally* Stender Posts, Ex. Q. In 2020, the Superintendent made political posts on this account calling supporters of former President Biden "snowflakes" and "idiot". Stender Posts, Ex. Q, p. 18-20, 34, 40. He publicly apologized for those comments and defended his right to engage in personal political speech. Stender Posts, Ex. Q, pp. 15-17.

48. Upon information and belief, the Superintendent has never been investigated or placed on leave for such posts, and continues to be employed by the District.

49. The Superintendent posted a letter on the District website concerning Crook's placement on leave and acknowledging that her treatment was a personnel matter. While not using

her name, she was easily identified by community members given the circumstances described herein. This action violated Crook's right to have her personnel matters kept confidential under Iowa law and further retaliated against her for the use of her First Amendment rights.

50. Actions of Defendants have denied Crook her First Amendment right to speak, discriminated against her for her viewpoint and expression of her viewpoint, and retaliated against her for the exercise of her right to speak and her particular viewpoint.

51. Defendants intend to further deprive Crook of her First Amendment rights by discriminating against and retaliating against her for exercising those rights in her Facebook comment described herein, by terminating her continuing teaching contract and depriving her of employment.

52. At all times, Defendants acted under color of state law.

## Irreparable Harm

53. Crook has already suffered irreparable harm. There is no adequate remedy at law for the violations of Crook's constitutional rights. Unless the requested injunctive and declaratory relief is granted, Crook will continue to suffer irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Melisa Crook respectfully requests that this Court enter judgment against Defendants and issue the following forms of relief:

A. A temporary restraining order issued as soon as practicable in anticipation of the October 21, 2025, hearing of the Board, restraining the Board from further action in contravention of Crook's First Amendment rights, including but not limited to her placement on administrative leave and pending termination;

B. An order setting this matter for hearing on the preliminary injunctive relief at the

earliest practical date;

  C. A preliminary injunction, and a permanent injunction, restraining Defendants from discriminating against or retaliating against Crook in any manner for her Facebook comment;

  D. A preliminary injunction, and a permanent injunction, restraining Defendants from continuing her administrative leave;

  E. A preliminary injunction, and a permanent injunction, restraining Defendants from pursuing termination proceedings against her under Iowa Code Ch. 279;

  F. A preliminary injunction, and a permanent injunction, restraining Defendants from taking or causing any other person to take action against her for her Facebook comment;

  G. An award of punitive damages against Sec. 1983 Defendants in their individual capacities for their reckless disregard, if not intentional indifference, to Crook's First Amendment rights;

  H. An award of her attorney fees and costs pursuant to 42 U.S.C. Sec. 1988; and

  I. Any such other or further relief as is necessary, proper, and just in the circumstances.

Respectfully Submitted,
/s/ Christy A.A. Hickman
Christy A.A. Hickman  AT0000518
/s/ Becky S. Knutson
Becky S. Knutson  AT0004225
/s/ Katherine E. Schoolen
Katherine E. Schoolen  AT0010031
IOWA STATE EDUCATION ASSOCIATION
777 3rd St., Des Moines, Iowa 50309
Phone: (515) 471-8004
christy.hickman@isea.org
becky.knutson@isea.org
katie.schoolen@isea.org
**ATTORNEYS FOR PLAINTIFF**