**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| Melissa Crook,<br><br>    Plaintiff,<br><br>v.<br><br>Creston Community School District, Board of Directors of the Creston Community School District, Don Gee, in his individual and official capacities as President of the Board of Directors of the Creston Community School District, and Deron Stender, in his individual and official capacities as Superintendent of the Creston Community School District<br><br>    Defendants. | NO. 4:25-cv-00373-SHL-HCA<br><br>**PLAINTIFF MELISA CROOK'S MEMORANDUM IN SUPPORT OF REQUEST FOR TEMPORARY RESTRAINING ORDER AND RESPONSE TO DEFENDANT'S RESISTANCE** |

COMES NOW Petitioner, Melissa Crook, and submits the attached Memorandum in Support of Request for Temporary Restraining Order and Response to Defendant's Resistance.

TABLE OF CONTENTS

SUMMARY OF ARGUMENT……………………………………………………………………2
STATEMENT OF STATEMENT OF FACTS…………………………………………………..2
ARGUMENT……………………………………..……………………………………………...4
    I. Defendants are Violating Crook's First Amendment Rights………………………….4
        A. First Amendment Rights…………………………………………………….....4
        B. Matter of Public Concern……………………………………………………….5
        C. Adverse Employment Action Caused by Exercise of
           First Amendment Rights………………………………………………………...5
        D. Crook's Speech is Protected by the Pickering Balancing Analysis…………..6
    II. Crook is Entitled to Injunctive Relief……………………………………………...7
        A. Irreparable Harm ……………………………………………………………….7
        B. Harm to Other Parties…………………………………………………………9
        C. Likelihood of Success on the Merits………………….…………….…………9

    D. Public Interest…………………………………………………………………….9

CONCLUSION AND REQUEST FOR RELIEF………………………………………….10

## SUMMARY OF ARGUMENT

Melisa Crook ( "Crook"), a public school teacher employed by the Creston Community School District ( "District"), engaged in constitutionally protected speech when she commented on a Facebook post extolling the virtue of public figure Charlie Kirk. Her comment expressed her personal opinion about the controversial conservative activist and did not advocate violence or death. Many others commented with similar opinions of Kirk, while others held differing views.

Solely because of her comment, Crook has been removed from her teaching position, placed on administrative leave, subjected to harmful public comments by the Superintendent and the District, she has been deemed by the Superintendent to have engaged in misconduct in violation of District policy, and recommended for termination. The instant action seeks to stop the violation of her First Amendment rights, now and in the future, and return her to her employment assignments with no further retaliation or record of discipline.

## STATEMENT OF FACTS

Crook is a non-probationary high school English teacher employed by the District. **Dkt. 1-4;1-5.** Late in the evening on September 10, 2025, Crook responded to a Facebook post by a family member related to public figure Charlie Kirk's death earlier that day. Kirks death generated mass amounts of news coverage, commentaries and social media posts by persons from President Donald Trump to people in the Creston community. Crook's comment on Facebook stated: "He is a terrible human being…terrible. I do not wish death on anyone, but he (sic) him not being here is a blessing." Within hours, Crook made a second comment in the string of comments and a post on her own Facebook page affirming that she did not condone

Kirk's death. Her opinion on the matter of public concern – Kirk's statements and positions during his life - was attacked almost immediately, including by her employer.

The District is a public school district in Iowa, governed by the Board of Directors ("Board").  Iowa Code Chapters 274 and 279.  Don Gee ("Gee") is the elected president of the Board.  Deron Stender ("Stender") is employed by the Board as the superintendent of schools, and Crook's supervisor.  Gee and Stender have publicly posted comments supporting Charlie Kirk's views and other similar political viewpoints, condemning contrary viewpoints.  **Dkt. 1-13;1-19; 1-20.**  Stender has a history of using school-related social media accounts for political purposes and has recently used social media to post his own views of Charlie Kirk, and has not been subject to termination or public discipline for his actions.  **Dkt. 1-20, pp. 45-70.**

Since Crook's post, Stender has used the District's social media resources to make multiple posts about Crook – not using her name but clearly referring to her as the community has already identified her as the subject of his notices due to her absence from teaching classes and extracurricular activity supervision, media posts, and Stender's public comments.  **Dkt. 1-9; 1-11; 1-13; 1-19,  pp. 18-20, 34, 40; Ex. S.**

While Stender claims that the District has received communications from unknown individuals, he, with his posts, keeps instigating public reaction.  **Dkt. 1-13.**  He can cite no actual disruption of classes or student activities, and local law enforcement has not identified an actual threat or disruption to the school.  **Dkt. 1-15.**

Due to the filing of the termination notice the District must now complete an employment reference reflecting its *investigation* of Crook, and the reasons therefor.  **Dkt. 1-7;** Iowa Code Sec. 56.146(25). Additionally, applications for employment through the Iowa Department of Education and its *TeachIowa* website require an applicant to disclose local investigations –

3

regardless of how the process ends – as well as terminations, whether appealed or not. **Ex. T.** Crook cannot now resign in the face of the current termination proceedings, because of the District's action, or her personnel records will lose their confidential status under Iowa Code Sec. 22.7(11)(a)(5), as they will if the Ch. 279 proceedings result in discipline or termination. Should the termination hearing proceed on October 21, 2025, as currently scheduled, the Board must post notice of the meeting and come into open session to announce its decision. **Dkt. 1-18;** Iowa Code Sec. 279.15-16. The Board must also report any termination to the Iowa Board of Educational Examiners, subjecting Crook to another proceeding and the potential loss of her teaching license. Iowa Code Sec. 256.160(1)(a)(2). Once the publication occurs, her reputation will be further damaged, additional records created and disseminated, that no later appeal or injunction will undo.

## ARGUMENT

I. Defendants are violating Crook's First Amendment Rights

A. First Amendment Rights.

Government employees are not obliged, simply by virtue of having entered public service, to completely relinquish their First Amendment rights. *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 465 (1995); *see also City of San Diego v. Roe*, 543 U.S. 77, 80 80 (2004) (per curiam); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). This Court long ago rejected the "dogma . . . that a public employee had no right to object to conditions placed upon the terms of employment—including those which restricted the exercise of constitutional rights." *Connick v. Myers*, 461 U.S. 138, 143 (1983). It recognized instead that "[t]here are some rights and freedoms so fundamental to liberty that they cannot be bargained away in a contract for public employment." *Borough of Duryea v. Guarnieri*, 131 S. Ct. 2488, 2493 (2011). While

public employees must "accept certain limitations" on their speech, they "do not surrender all their First Amendment rights by reason of their employment." *Melton v. City of Forrest City*, 147 F.4th 896 (8th Cir. 2025) (citing *Garcetti v. Ceballos, 547 U.S. 410, 417-419, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006)*. "[S]peech by citizens on matters of public concern lies at the heart of the First Amendment." *Lane v. Franks*, 573 U.S. 228, 235-36, 134 S. Ct. 2369, 2377 (2014).

B. Matter of Public Concern

The initial question in this case is whether an employee's purely personal speech on the controversial public figure, Charlie Kirk, is a matter of public concern. "Whether an employee spoke as a citizen on a matter of public concern is a question of law for the court." *Thomas v. Marshall Pub. Sch.*, No. 24-3176, 2025 U.S. App. LEXIS 21797, at *8 (8th Cir. Aug. 26, 2025). As the public reaction included comments from the Iowa Standard, from Gee, from multiple media reports and lawsuits across the nation, and from the alleged callers to the school, clearly the killing photographed live generated public concern. In *Connick v. Myers*, 461 U.S. 138 (1983) and the subsequent cases in which this Court has developed the concept of speech on matters of "public concern," the circumstances in which a government employer is free to retaliate against employee speech have been carefully defined in terms that clearly do not apply to matters such as internal work grievances or selling videos depicting an employee stripping off a police uniform and engaging in sexual activity, as in *City of San Diego v. Roe*, 543 U.S. 77, 80 80 (2004) (per curiam).

C.   Adverse Employment Action Caused by Exercise of First Amendment Rights

Crook has already been subjected to a publicized administrative leave, has been barred from coming on school property, and subjected to a termination notice. Her ability to be on public property has been restricted, her reputation damaged, and her future employment

5

applications and references marred by the requirement for reporting the threatened termination. She faces a termination hearing before a board led by Gee, who publicly espouses a different view on Charlie Kirk. Her First Amendment right to speak as a private citizen on a matter of public concern that does not involve her employer has been denied to her by her government employer.

There is no question that the actions taken by Defendants are due to Crook's speech. The immediate administrative leave, investigation into Crook's Facebook post, and termination notice specifically articulate that the only reason for the Defendants' action are her speech. **Dkt. 1-7; 1-12.**

D.      Crook's is Protected under the *Pickering* Balancing Analysis

The next question in a case such as this, then, is whether the speech at issue, falls into an area that gives the public employer the categorical prerogative to discharge, discipline, or take other adverse action against the employee in retaliation for the speech. See, e.g., *Roe*, 543 U.S. at 84; *Garcetti*, 547 U.S. at 421. "First Amendment protection of a public employee's speech depends on a careful balance 'between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs.'" *Lyons v. Vaught*, 875 F.3d 1168, 1172 (8th Cir. 2017)(citing *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968)). In conducting that balancing of interests, this Court has noted that "the manner, time, and place of the employee's expression" and "the context in which [it] arose" are also relevant. *Rankin v. McPherson*, 483 U.S. 378, 388 (1987). The general rule is that a statement expressing a viewpoint on a moral or political issue is protected under the First Amendment, regardless of whether others find it offensive. *Melton v. City of Forrest City*, 147

F.4th 896 (8th Cir. 2025); *see also Packingham v. North Carolina*, 582 U.S. 98, 104, 137 S. Ct. 1730, 198 L. Ed. 2d 273 (2017) (recognizing "social media" as one of "the most important places" for the "exercise of First Amendment rights"). Here, Crook's post, like many others, was on a personal social media page.

"[A] public employer must, with specificity, demonstrate the speech at issue created workplace disharmony, impeded the plaintiff's performance or impaired working relationships." *Lindsey v. City of Orrick*, 491 F.3d 892, 900 (8th Cir. 2007); *Dempsey v. City of Omaha*, 633 F.3d 638, 651 (8th Cir. 2011). In this matter, no evidence suggests Crook's comment created disharmony among her colleagues or negatively impacted her performance as a high school English teacher or dance team sponsor. There is a similar absence of an adverse impact on the educational environment for students. "Vague and conclusory" claims of disruption without more "runs the risk of constitutionalizing a heckler's veto." *Melton v. City of Forrest City*, 147 F.4th 896 *8 (8th Cir. 2025). Further, "[e]nough outsider complaints could prevent government employees from speaking on any controversial subject, even on their own personal time." *Id.* It is clear the District was never prevented from delivering an educational program in a safe and effective environment and cannot show sufficient justification to take adverse action against Crook. *See id*. (finding jammed phone lines and calls from concerned citizens is insufficient to overcome public employee's right to free speech where public employer experienced no disruption to services provided).

II.     Crook is Entitled to Injunctive Relief

    A. "[T]he standards for issuing either a temporary restraining order or a preliminary injunction in [the Eighth Circuit] are set out in the seminal decision of *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 & n.5 (8th Cir. 1981) (en

7

banc)." *United States v. Barnes*, 912 F. Supp. 1187, 1192 (N.D. Iowa 1996). Factors outlined in *Dataphase* are "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Id.* at 113. The probability of success is the most significant factor. *Carson v. Simon,* 978 F.3d 1051, 1059 (8th Cir. 2020). Irreparable Harm

The threat of irreparable harm is clear in this case. As set forth above, Crook has already been damaged, and the damage to Crook's reputation, teaching license, and First Amendment rights increase as this matter proceeds. Her professional reputation will be permanently marred by any termination proceeding, as she will have to disclose it in the future and Defendants have the right to disclose the fact of the termination proceedings and the circumstances therefor. The chilling effect on her ability to speak is recognized damage. In a recent South Dakota case, *Hook v. Rave*, the Court stated:

> Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). But in cases implicating the First Amendment, courts normally assume irreparable injury because "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19, 141 S. Ct. 63, 208 L. Ed. 2d 206 (2020)(internal quotation marks omitted);see also *Iowa Right to Life Comm., Ins. v. Williams*, 187 F.3d 963, 970 (8th Cir. 1999).

*Hook v. Rave*, No. 4:25-CV-04188-KES, 2025 U.S. Dist. LEXIS 190287, at 13 (D.S.D. Sep. 24, 2025).

B.  Harm to Other Parties.

The Defendants will be unable to articulate any harm by returning Crook to her regular duties. To the contrary, they will be able to return a regular teacher and sponsor to the positions that she has held, and performed satisfactorily, for years.

C.  Probability of Success on the Merits

In *Hook v. Rave,* a state university professor who made comments regarding the death of Charlie Kirk, and successfully sought injunctive relief to prevent his employer from proceeding with a termination meeting. *Hook v. Rave*, No. 4:25-CV-04188-KES, 2025 U.S. Dist. LEXIS 190287 (D.S.D. Sep. 24, 2025). The court applied the *Melton* analysis and determined Hook's speech was protected by the First Amendment. *Id.* at 7-8. The Court stated it did not matter if the speech was inappropriate or controversial if the speech dealt with a matter of public concern. *Id.* Therefore, the Court determined Hook's speech was protected by the First Amendment. *Id.* at 9.

Finally, the Court determined the employer took an adverse action against Hook by terminating him because there was "a material change in the terms or conditions" of his employment and that the change would "chill a person of ordinary firmness" from continuing to engage in activity protected by the First Amendment. *Hook* at 10. (citing *Grooms v. Privette*, 127 F.4th 730, 734 (8th Cir. 2025) (internal quotations omitted). The facts and analysis in this case are significantly similar and show that Crook is likely to prevail on the merits of her claims.

D.  The Public Interest

Defendants will be unable to show that the public interest is in any way harmed by injunctive relief. To the contrary, a qualified teacher will be returned to work and her First Amendment Rights will be restored. As the *Hook* court noted, "The public has a compelling interest in

9

protecting its First Amendment rights." *Hook* at *14 (citing *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008) ("[I]t is always in the public interest to protect constitutional rights.").

III.     Conclusion and Requested Relief

The First Amendment "was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people" and "[s]peech by citizens on matters of public concern lies at the heart of the First Amendment." *Lane v. Franks*, 573 U.S. 228, 235-36, 134 S. Ct. 2369, 2377 (2014). Freedoms bestowed by the First Amendment are "supremely precious in our society" but are also "delicate and vulnerable.'" *NAACP v. Button*, 371 U.S. 415, 433, 83 S. Ct. 328, 338 (1963); *see also Dakota Rural Action v. Noem, 416 F. Supp. 3d 874, 890 (D.S.D. 2019)*. Crook's speech as a private citizen should not lose its protection due to disagreement by a vocal few agitated and instigated by conservative media and the District itself. Crook apologized and clarified within hours of her original comment. The totality of the circumstances demand protection of Crooks First Amendment rights. Crook respectfully request the Court preserve her First Amendment rights and enjoin the District from its current course of action as set forth in her Petition and Motion for Temporary Injunction.

                              Respectfully Submitted,
/s/ Christy A.A. Hickman
Christy A.A. Hickman AT0000518
/s/ Becky S. Knutson
Becky S. Knutson AT0004225
/s/ Katherine E. Schoolen
Katherine E. Schoolen  AT0010031
IOWA STATE EDUCATION ASSOCIATION
777 3rd St., Des Moines, Iowa 50309
Phone: (515) 471-8004
christy.hickman@isea.org
becky.knutson@isea.org
katie.schoolen@isea.org

ATTORNEYS FOR PLAINTIFF

Copies to:
Janice M. Thomas
Ryan P. Tunink
LAMSON DUGAN & MURRAY, LLP
6400 Westown Parkway, Suite 280
West Des Moines, IA 50266
 Email: jthomas@ldmlaw.com
           rtunink@ldmlaw.com
**ATTORNEYS FOR DEFENDANT**

| Certificate of Service |
|---|
| The undersigned hereby certifies that a true copy of the foregoing instrument was served upon the attorneys listed above at their respective addresses/fax number/e-mail addresses as disclosed by the pleadings of record herein, on the 16th day of October 16, 2025. |
| By: |
| ☐ U.S. Mail          ☐ FAX |
| ☐ Hand Delivered   ☐ Overnight Courier |
| ☐ Email               X PACER |
| Signature: /s/Becky S. Knutson |