IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| MELISA CROOK, | No. 4:25-cv-00373-RGE-HCA |
| Plaintiff, | |
| v. | ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |
| CRESTON COMMUNITY SCHOOL DISTRICT, BOARD OF DIRECTORS OF CRESTON COMMUNITY SCHOOL DISTRICT, DERON STENDER, and DON GEE, , | |
| Defendants. | |

## I.    INTRODUCTION

Plaintiff Melisa Crook is a high school teacher in the Creston Community School District. After Crook posted a comment on Facebook about the death of Charlie Kirk, Defendants took action against her. Defendant Deron Stender placed Crook on administrative leave the same night Crook posted her Facebook comment. Days later, after fielding phone calls and emails concerning the post and requesting additional law enforcement presence in the District, Stender concluded an investigation against Crook and issued her a Notice of Recommendation to Terminate her teaching contract with the District. Crook seeks a preliminary injunction to enjoin Defendants from discriminating against her or retaliating against her based on her Facebook comment.

For the following reasons, the Court grants in part and denies in part Crook's motion for a preliminary injunction.

## II.    BACKGROUND

### A.    Procedural Background

Crook filed a complaint that included a request for a temporary restraining order and preliminary injunction, alleging violations of her First Amendment rights based on Defendants'

response to her Facebook post. Pl.'s Compl. TRO & Prelim. Inj., ECF No. 1. Defendants resisted, arguing Crook's complaint was procedurally improper, she did not sufficiently allege irreparable harm, and she was not likely to succeed on the merits of her claim. Defs.' Resist. Pl.'s Compl. TRO & Prelim Inj., ECF No. 9; Defs.' Br. Supp. Resist. Pl.'s Compl. TRO & Prelim. Inj., ECF No. 9-1. Crook then filed a motion for a temporary restraining order and preliminary injunction. Pl.'s Mot. TRO & Prelim Inj., ECF No. 12; Pl.'s Br. Supp. Mot. TRO & Prelim. Inj., ECF No. 12-1. In her motion for a temporary restraining order and preliminary injunction, Crook alleges Defendants discriminated against her and subjected her to retaliation based on her Facebook post, in violation of the First Amendment. *Id.* Crook requested the Court grant her relief by requiring Defendants to reinstate her to her teaching and extracurricular positions and barring Defendants from pursuing further termination proceedings against her. *Id.* Crook also requested the Court restrain Defendants from discriminating against her or retaliating against her based on her Facebook comment. *Id.*

The Court granted in part Crook's motion for a temporary restraining order, enjoining Defendants from holding a hearing regarding Crook's employment or taking any other adverse employment actions against Crook based on the Notice of Recommendation to Terminate for her Facebook post. Order Pl.'s Mot. TRO & Prelim. Inj., ECF No. 13. The Court set a hearing to consider Crook's motion for a preliminary injunction. Scheduling Order, ECF No. 14. The Court extended the temporary restraining order for good cause in response to Defendants' unresisted motion to continue the preliminary injunction hearing. Order Granting Defs.' Mot. Continue, ECF No. 19.

Prior to the preliminary injunction hearing, Crook and Defendants filed briefs related to Crook's motion for a preliminary injunction. Defs.' Resist. Pl.'s Mot. Prelim. Inj., ECF No. 31; Pl.'s Br. Supp. Mot. Prelim. Inj., ECF No. 43.

Counsel appeared for a hearing on Crook's motion for a preliminary injunction on

December 11, 2025, and December 15, 2025. Mot. Prelim. Inj. Hr'g Mins., ECF No. 44; Mot. Prelim. Inj. Hr'g Mins., ECF No. 47. Crook submitted affidavits supporting her motion for a preliminary injunction, elicited testimony from live witnesses, and offered exhibits. Pl.'s Third Am. Witness & Exhibit List, ECF No. 38; ECF No. 44; ECF No. 47. Defendants did the same. Defs.' First Am. Exhibit List, ECF No. 30; Defs.' First Am. Witness List, ECF No. 41. The parties noted their objections to evidence both at the preliminary injunction hearing and in their written filings. Defs.' Objs. Pl.'s Ex. List, ECF No. 35; Pl.'s Objs. Defs.' Ex. List, ECF No. 42; ECF No. 44 at 1; ECF No. 47 at 1. The Court admitted evidence subject to the parties' objections. *See* ECF No. 44; ECF No. 47. The Court also granted the parties leave to submit written closing arguments. *See* Defs.' Closing Argument Br. Supp. Resist. Pl.'s Mot. Prelim. Inj., ECF No. 48; Pl.'s Closing Argument Br. Supp. Mot. Prelim. Inj., ECF No. 51. The Court again extended the temporary restraining order for good cause. Text Order, ECF No. 46.

Crook requests the Court grant her relief by entering a preliminary injunction requiring Defendants to reinstate her to her teaching position. ECF No. 12 at 4. Crook requests an injunction restraining Defendants from discriminating against her or retaliating against her for her Facebook comment. *Id.* at 13. Crook also requests attorney fees and any other relief the Court deems appropriate. *Id.*

### B.    Factual Background

#### 1.    Evidentiary Standard

"[G]iven the haste that is often necessary [at the preliminary injunction stage], a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Because of the urgency of preliminary injunction relief and limited development of the factual record, the rules of evidence do not apply at full force at preliminary injunction proceedings. *See Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010)

("[H]earsay evidence may be considered by a district court in determining whether to grant a preliminary injunction"); *Sierra Club, Lone Star Chapter v. F.D.I.C.,* 992 F.2d 545, 551 (5th Cir. 1993) ("[A]t the preliminary injunction stage, the procedures in the district court are less formal, and the district court may rely on otherwise inadmissible evidence . . . [such as] deposition transcripts and affidavits."). The Federal Rules of Evidence, at the preliminary injunction stage, goes to the weight of the evidence rather than preclusion. *See Mullins,* 626 F.3d at 52. "To hold otherwise would be at odds with the summary nature of the remedy and would undermine the ability of courts to provide timely provisional relief." *Id.* Therefore, at the preliminary injunction stage of proceedings, the Court is informed by the Federal Rules of Evidence and the parties' objections when assessing the persuasive weight of the evidence.

## 2.    Factual Findings

Because of the preliminary nature of a preliminary injunction, the Court's findings of fact and conclusions of law are not binding in future proceedings. *See Camenisch*, 451 U.S. at 395.

Crook is a high school English teacher and District dance team leader employed by Creston Community School District. ECF No. 51 at 1; *see* ECF No. 44 at 1. Crook has been employed by Creston Community School District since 2022 on a continuing teaching contract. *Id.*

On September 10, 2025, Charlie Kirk was shot and killed while speaking at an event at Utah Valley University. ECF No. 51 at 1. On the evening of September 10, at her home and on her personal time, Crook opened her personal Facebook account and saw a post from a member of her family. *Id.* at 2; *see* Pl.'s Ex. 5 at 2, ECF No. 27-5. Crook responded to the post with the comment: "He is a terrible human being . . . terrible. I do not wish death on anyone, but he [sic] him not being here is a blessing." Pl.'s Ex. 4 at 1, ECF No. 27-4.

That same evening, The Iowa Standard, a news outlet, reported on Crook's comment. Pl.'s Ex. 15 at 1, ECF No. 27-15. Shortly thereafter, The Iowa Standard reported on a statement attributed to the Creston Community School District. *Id.* at 2. The District stated in part, "I want

4

to take a moment to address a recent post that has come to my attention. Please know that I am fully aware of the situation, and I want to assure you that the content of that post does not reflect the values, beliefs, or opinions of our district." *Id.* The statement included Crook's comment. *Id.*

At 9:26 PM that evening, Stender, Superintendent of the Creston Community School District, sent Crook a text notifying her she was being placed on administrative leave. Pl.'s Ex. 6 at 1–2, ECF No. 27-6 ("I have been made aware of a recent post and have consulted with the district attorney. . . . At this time, you are placed on paid administrative leave"). Stender also published a message to parents through the ParentSquare platform to "address a recent post made on social medial by a school employee" and "assure [them] that the post does not reflect the values, beliefs, or opinions of the district." Pl.'s Ex. 7 at 1, ECF No. 27-7.

The next morning, Crook noticed her comment had been perceived in a way she did not anticipate. In a Facebook comment, Crook "apologized for offending anyone" and clarified she was "[n]ot wishing anyone death." Pl.'s Ex. 4, ECF No. 27-4 at 2. Later that morning, Crook posted a more extensive apology to her Facebook page:

> I want to clarify a statement I made yesterday. I do NOT condone violence or the killing of people you disagree with politically or otherwise. That was never my intent. That is not who I am, nor what I believe. I believe strongly in the freedom of speech which also means I can disagree. I do not treat others poorly or wish them any harm because we do not agree. I am actually very open and accepting of different people with different ideas.
>
> The point I was trying to make is that he has marginalized a lot of powerless people, creating polarized political discourse. I believe all people have the right to their own beliefs, including me.
>
> I am sorry I have offended people in this community, believing that I condone killing others. I did not think he should be killed. After further review, I should have thought more about how I chose to post my thoughts, how it would sound. I take responsibility for the poor wording of my post.

*Id.* On the afternoon of September 11, 2025, Stender called Crook to an investigatory meeting. ECF No. 51 at 3. He asked her multiple times about the meaning of and her intent behind using the word "blessing" in her original Facebook comment. *Id.* That evening, Stender emailed the

Board of Directors of the Creston Community School District notifying them of his investigation into Crook's "intentions and social media post." Defs.' Ex. G at 7, ECF No. 26-7.

On Friday, September 12, 2025, Stender released a message to parents, stating "I am writing to provide an update regarding a current personnel matter in the District. Please know that we are carefully reviewing the situation in accordance with Board policy and applicable laws . . . ." *Id.* at 2.

That same day, the Creston Community High School Assistant Principal, Scott Driskell, became aware of a rumor regarding the possibility of the school being a target for violence. Driskell Aff. ¶¶ 16–20, Defs.' Witness List, ECF No. 39-1. Driskell contacted teachers and the District about the rumor and notified them the school had "determined there is no credible threat." Defs.' Ex. J at 5, ECF No. 26-10.

Stender then contacted Sheriff Brian Bolton to inquire about the possibility of additional law enforcement presence at the school. Pl.'s Ex. 14 at 4–5, ECF No. 27-14.[1] Stender sent a message via ParentSquare notifying parents that the District "is aware of a rumor circulating regarding an unsubstantiated threat of school violence. After thoroughly reviewing the matter, we have determined there is no credible threat to our schools." Defs.' Ex. J, ECF No. 26-10 at 4. He also notified parents that, "out of an abundance of caution, we have asked local law enforcement to be present at school . . . ." *Id.* Creston Community High School Principal Bill Messerole also sent a message to parents that day notifying them "Mr. Driskell has already met with all of the students involved and quickly determined that no direct threat existed." *Id.* at 6. He wrote, "[f]our students at CCHS left for the day after their parents called and asked them to be released due to the perceived threat." *Id.* at 6, 11.

---

[1] The Court notes Crook's counsel clarified at the preliminary injunction hearing the referenced text messages are included as Plaintiff's Exhibit 14, notwithstanding the "Exhibit 9" labeling on the exhibit pages. ECF No. 47 at 1.

Stender again contacted Sheriff Bolton on Sunday, September 14, 2025, to inquire about increased law enforcement presence at the school. Pl.'s Ex. 14, ECF No. 27-14 at 17. Bolton testified at the preliminary injunction hearing he provided additional security to the elementary school campus out of an abundance of caution; the elementary school does not include the high school campus where Crook teaches. *See* ECF No. 47 at 1. Bolton also testified the Sheriff's Office did not conduct an independent threat investigation when providing a law enforcement presence at the school; instead, the Sheriff's Office relied solely on Stender's request for a law enforcement presence. *Id.* That evening, Stender released another message to parents through ParentSquare, stating "I want to be clear: personal views have no place in the instruction of our children" and noting the law enforcement presence at schools was a "precautionary measure." Defs.' Ex. G, ECF No. 26-7 at 3.

On September 15, 2025, Stender called Crook to a meeting to let her know the investigation had concluded. ECF No. 51 at 5. The investigative report dated September 15, 2025, contends the Superintendent's Office received "more than 111 emails and 140 calls," the vast majority of which originated from parents "asking for [Crook's] termination or requesting to have their children removed from [Crook's] classroom." Defs.' Ex. H at 1, ECF No. 26-8. The report also stated Crook's Facebook comment "resulted in the need to increase law enforcement presence" and "violates district policy 401.14 Employee Expression and potentially others." *Id.*

On September 23, 2025, Stender delivered to Crook a Notice of Recommendation to Terminate Crook's continuing teaching contract. *See* Pl.'s Ex. 10 at 1, ECF No. 27-10. The Notice lists nine reasons for which Stender recommended Crook's termination, "any one of which constitutes just cause." *Id.* Each of the nine reasons refers directly or indirectly to Crook's Facebook comment. *Id.* The Notice specifically notes Crook's conduct violated Board Policies 401.14, 404, 404.1R1, and 404.1R2. *Id.* Following receipt of the Notice, Crook requested a hearing in front of the Board. *See* Pl.'s Ex. 11 at 1, ECF No. 27-11. Stender also delivered his Notice of

Recommendation to Terminate Crook's continuing teaching contract to the Board, as required by Iowa Code § 279.15. *See* Pl.'s Ex. 12 at 1–3, ECF No. 27-12.

The Court sets out additional facts as necessary below.

### C.    Evidentiary Analysis

The Court draws its factual findings from the record as to the preliminary injunction. The evidence includes declarations from Crook's witnesses; declarations from Defendants' witnesses; Crook's Facebook posts; the District's response to Crook's post; the Notice of Recommendation to Terminate tendered by Stender to Crook and the Board; a log of calls the District received regarding Crook's post; a summary of the emails the District received regarding Crook's post; voicemail recordings and a transcript of the voicemails the District received regarding Crook's post; the social media posts responding or relating to Crook's post; and Stender's communications with Sheriff Brian Bolton regarding school security. Defs.' Exs. A–O, ECF Nos. 26-1 to 26-13, 30-1; Pl.'s Exs. 1–20, ECF Nos. 27-1 to 27-16, 29-1, 33-1 to 33-3; Pl.'s Affs., ECF Nos. 38-1 to 38-13; Defs.' Affs., ECF No. 39-1 to 39-11. The Court also considers representations and admissions counsel made at the preliminary injunction hearing and the parties' closing arguments. *See generally* ECF No. 44; ECF No. 47; ECF No. 48; ECF No. 51. At the preliminary injunction hearing, the Court admitted evidence subject to objections. *See* ECF No. 44; ECF No. 47. The parties noted their objections both at the preliminary injunction hearing and in their written filings. *Id.*; ECF No. 32; ECF No. 42. The Court is informed by the Federal Rules of Evidence and the parties' objections when assessing the persuasive weight of the evidence at this stage of the litigation. *See* Fed. R. Evid. 402, 403, 602, 802; ECF No. 32; ECF No. 42; ECF No. 44; ECF No. 47.

The Court assesses the persuasive weight of Defendants' evidence regarding disruption to District operations caused by Crook's Facebook post. Defendants provide information concerning the calls, emails, and other alleged disruption to the District's activities. The "111 emails" cited by

Stender in the investigative report were provided in summary form. Defs.' Ex. F, ECF No. 26-6. Because Defendants could not lay a foundation for the emails, the emails lack persuasive authority. *See* ECF No. 47 at 1. The "140 calls" were provided to the Court via a call log, transcription of voicemails, and voicemail recordings. Defs.' Ex. L, ECF No. 26-12; Defs.' Ex. O, ECF No. 30-1; *see* Prelim. Inj. Hr'g Ex. List 3, ECF No. 47-2. While one of the 104 voicemail messages provided appears to be from a parent or student, *see* Defs.' Ex. L, ECF 26-12 at 5, Defendants did not identify how many of the other calls originated from parents of students in the District or members of the Creston community generally, *see* ECF No. 44 at 1; ECF No. 47 at 1. The calls are not probative of disruption. Similarly, the social media posts Defendants provided are not probative of disruption because none of the posts are identified as originating from members of the Creston community. *See* Defs.' Ex. M, ECF No. 26-13; ECF No. 44 at 1; ECF No. 47 at 1.

In regard to school safety, no students testified as to the threat of violence at the school or submitted affidavits concerning the rumor regarding school violence at the preliminary injunction hearing. *See generally* ECF No. 44 at 1; ECF No. 47 at 1. Additionally, because Stender requested law enforcement presence at the school after his and others' determination that the threat of violence was unsubstantiated, the Court does not find the law enforcement presence on campus probative of disruption to the District's activities. *See* ECF No. 44 at 1; Defs.' Ex. J, ECF No. 26-10 at 4; Pl.'s Ex. 8 at 1, ECF No. 27-8; Pl.'s Ex. 14, ECF No. 27-14 at 17.

## III.    LEGAL STANDARD

The four factors the Court considers when determining whether to issue a preliminary injunction are set forth in *Dataphase Systems, Inc. v. C L Systems, Inc.*: 1) "the probability that movant will succeed on the merits"; 2) "the threat of irreparable harm to the movant"; 3) "the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant"; and 4) "the public interest." 640 F.2d 109, 113 (8th Cir. 1981); *see also Sports Design & Dev., Inc. v. Schoneboom*, 871 F. Supp. 1158, 1162–63 (N.D. Iowa 1995) (citing

*S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989)). When a plaintiff seeks to restrain governmental action, the public interest and balancing of harm factors largely merge. *See Eggers v. Evnen*, 48 F.4th 561, 564 (8th Cir. 2022). Ultimately, the Court must "flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1989) (citation omitted).

"Success on the merits has been referred to as the most important of the four [*Dataphase*] factors." *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011). "When determining the likelihood of [Plaintiff's] success on the merits, [the Court does] not have to decide whether [Plaintiff] will ultimately win, [but a]n injunction cannot issue if there is no chance of success on the merits." *Jet Midwest Int'l Co., Ltd v. Jet Midwest Grp., LLC*, 953 F.3d 1041, 1044 (8th Cir. 2020) (cleaned up) (citations omitted). Further "[Plaintiff] does not need to prove a greater than fifty per cent likelihood that [she] will prevail on the merits." *Id.* at 1044–45 (citation omitted). But Plaintiff "must . . . show a 'fair chance of prevailing.'" *Id.* at 1045 (quoting *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (en banc)). When a plaintiff asserts multiple claims and seeks preliminary relief, "[t]he plaintiff need only establish a likelihood of succeeding on the merits of any one of [her] claims." *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*, 826 F.3d 1030, 1040 (8th Cir. 2016) (internal quotation marks and citation omitted).

## IV.    DISCUSSION

Application of the *Dataphase* factors is not a "rigid formula." *Bandag, Inc. v. Jack's Tire & Oil, Inc.*, 190 F.3d 924, 926 (8th Cir. 1999). "No single factor in itself is dispositive; in each case all the factors must be considered to determine whether on balance they weigh towards granting the injunction." *Calvin Klein Cosms. Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 503 (8th

Cir. 1987). Nevertheless, the likelihood of success on the merits is the most significant factor. *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013).

The Court considers each *Dataphase* factor as applied to Crook's claims against Stender. The Court does not analyze the claims against the remaining defendants for the purposes of the preliminary injunction. The Court concludes each *Dataphase* factor weighs in favor of Crook as to her claims against Stender.

## A.     Likelihood of Success on the Merits

Crook brings a § 1983 claim against Defendants, alleging retaliation and discrimination in violation of her First Amendment rights. ECF No. 1 ¶¶ 39–52. As a general matter, "public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). To establish a violation of her First Amendment rights, Crook must show "(1) that [s]he engaged in a constitutionally protected activity; (2) that the defendant[s] took adverse action against [her] that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated in part by [Crook]'s exercise of [her] constitutional rights." *Scheffler v. Molin*, 743 F.3d 619, 621 (8th Cir. 2014).

### 1.     Constitutionally Protected Activity

To determine whether Crook's speech is constitutionally protected, the Court must first evaluate whether Crook provides sufficient facts to establish she spoke as a citizen on a matter of public concern. *See Mayfield v. Mo. House of Reps.*, 122 F.4th 1046, 1053 (8th Cir. 2024); *see Connick v. Myers*, 461 U.S. 138, 147 (1983); *Lane v. Franks,* 573 U.S. 228, 235–36 (2014) ("[S]peech by citizens on matters of public concern lies at the heart of the First Amendment."). If Crook provides sufficient evidence to establish she spoke as a citizen on a matter of public concern, "the next question is whether [Defendants have] produced evidence to indicate the speech had an

adverse impact on the efficiency of the [employer's] operations." *Mayfield,* 122 F.4th at 1053 (internal quotation marks and citation omitted) (alternations in original). Defendants must establish Crook's speech "created workplace disharmony, impeded [Crook's] performance, . . . impaired working relationships, or otherwise had an adverse impact on the efficiency of the [District's] operations." *Melton v. City of Forrest City, Ark.,* 147 F.4th 896, 902 (8th Cir. 2025) (internal quotation marks and citation omitted). If Defendants have produced evidence of an adverse impact on the efficiency of their operations, the Court engages in a *Pickering* balancing inquiry to weigh Crook's First Amendment interests against Defendants' efficiency interests. *See Pickering v. Board of Education,* 391 U.S. 563, 568 (1968).

a.    Speech as a Citizen on a Matter of Public Concern

At this preliminary stage, Crook has provided sufficient evidence to support her contention that she spoke as a citizen on a matter of public concern when posting her Facebook comment. Defendants do not contest Crook spoke as a citizen on a matter of public concern. ECF No. 31 at 8 ("Defendants do not contest that Plaintiff's speech addressed a matter of public concern, satisfying the first *Pickering* element."). "A public employee's speech is not protected by the First Amendment if it 'owes its existence' to [the employee's] professional responsibilities," *McGee v. Pub. Water Supply Dist. No. 2,* 471 F.3d 918, 921 (8th Cir. 2006) (quoting *Garcetti,* 547 U.S. at 411), because "a public employee does not speak as a citizen if he speaks pursuant to his job duties," *Lindsey v. City of Orrick,* 491 F.3d 892, 898 (8th Cir. 2007). Additionally, "[s]peech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Lane,* 573 U.S. at 241 (internal quotation marks and citations omitted). In determining whether speech is protected, the court must examine the "content, form, and context of a given statement, as revealed by the whole record." *Connick,* 461 U.S. at 147–48.

12

Crook posted her Facebook comments on her personal time, at home, from her personal Facebook account. She did not purport to speak as an employee of the Creston Community School District. *See* Pl.'s Ex. 5, ECF No. 27-5 at 2. Her original comment responded to and discussed the death of a public figure, Charlie Kirk, and her longer post clarified her intent in posting the comment. *Id.*; Pl.'s Ex. 4, ECF No. 27-4 at 2 ("The point I was trying to make is that he has marginalized a lot of powerless people, creating polarized political discourse"). The content, form, and context of Crook's Facebook comment and post indicate her engagement with a public news story published and discussed across traditional media outlets and social media outlets. *Cf. Connick,* 461 U.S. at 147–48. This speech can be "fairly considered as relating to any matter of political, social, or other concern to the community." *Lane,* 573 U.S. at 241. Thus, Crook spoke as a citizen on a matter of public concern in her Facebook comments.

### b.    Disruption

Because, at this stage of the litigation, there is sufficient evidence to support Crook's assertion that she spoke as a citizen on a matter of public concern, the Court must next determine whether Defendants produced sufficient evidence to indicate Crook's speech had an adverse impact on the efficiency of District operations. *See Lindsey,* 491 F.3d at 900 ("To trigger the *Pickering* balancing test, a public employer must, with specificity, demonstrate the speech at issue created workplace disharmony, impeded the plaintiff's performance or impaired working relationships"); *see also Mayfield,* 122 F.4th at 1054–55 ("Defendants bear the burden of putting the *Pickering* balancing test into play by submitting evidence of disruption"). Defendants may produce evidence of actual disruption to the efficiency of District operations or may produce evidence showing a reasonable belief in the potential for disruption. *Cf. Melton,* 147 F.4th at 903; *see also Anzaldua v. Ne. Ambulance & Fire Prot. Dist.,* 793 F.3d 822, 833–34 (8th Cir. 2015). The Court will give "substantial weight to government employers' reasonable predictions of disruption, even when the speech involved is on a matter of public concern," but the Court will not defer to

13

government employers' predictions of disruption when the prediction is unsubstantiated by the evidence. *Waters v. Churchill*, 511 U.S. 661, 673 (1994); *see Burnham v. Ianni,* 119 F.3d 668, 680 (8th Cir. 1997) ("[W]e have never granted any deference to a government supervisor's bald assertions of harm based on conclusory hearsay and rank speculation").

Based on the preliminary injunction evidence, the Court finds Defendants did not provide sufficient evidence of disruption or a reasonable belief in the potential for disruption to advance to *Pickering* balancing. Defendants contend Crook's post caused "significant disruption to District operations" through "enormous public response in the form of endless phone calls and emails to the District." ECF No. 48 at 5. They further contend disruption occurred to school operations from parents stating they would remove their student from Crook's classroom or the District, safety concerns and the presence of law enforcement on campus, and staff monitoring the hallways of the school over the course of a week. *See* ECF No. 31 at 8–10; ECF No. 48 at 4–12. The evidence of the timing of the District's response to Crook's post, reasonableness of the response, and actual impact the post had on the District's efficiency weigh against a finding of disruption.

At the outset, the Court outlines the groups relevant to a disruption analysis. The Court is wary of "constitutionalizing a heckler's veto," whereby "[e]nough outsider complaints could prevent government employees from speaking on any controversial subject, even on their own personal time." *Melton,* 147 F.4th at 903. In *Melton,* the Eighth Circuit found a genuine issue of material fact existed as to disruption when a "firestorm" of phone calls from "concerned citizens" was alleged to have "disrupted the work environment," rather than "the post or controversy surrounding it." *Id.* (internal quotation marks and citations omitted). Charlie Kirk's death garnered national attention, and both Crook and Defendants recognize responses to Crook's Facebook post originated from well outside the District. *See* Defs.' Ex. M, ECF No. 26-13; Pls.' Ex. 15, ECF No. 27-15 at 1–7; Pls.' Ex. 16 at 1, ECF No. 27-16. At this stage of the litigation, the Court finds evidence and responses from parents, students, teachers, staff, and members of the Creston

Community School District and Creston community probative; responses originating from outside of the District are not probative of disruption. *See Melton,* 147 F.4th at 903 (highlighting the disruption analysis should focus internally "on the fire department itself" by emphasizing "[n]o current *firefighter* complained or confronted him about [the post]. Nor did any co-worker or supervisor refuse to work with him.") (emphasis in original); *Melzer v. Bd. of Educ. of City Sch. Dist. of City of New York*, 336 F.3d 185, 199 (2d Cir. 2003) ("Any disruption created by parents can be fairly characterized as internal disruption to the operation of the school").

The Court first addresses the phone calls, emails, and social media posts Defendants provide as evidence of disruption to school operations. Defendants contend Crook's post "resulted in [Stender's] office receiving more than 111 emails and 140 calls, with the vast majority of them asking for [Crook's] termination or requesting to have their children removed from [Crook's] classroom." Defs.' Ex. H, ECF No. 26-8 at 1. Defendants provide evidence of the total calls and a log of calls received, a summary of the emails received, voicemail recordings and a transcript of the voicemails received, and a record of social media posts responding or relating to Crook's Facebook comment. Defs.' Ex. F, ECF No. 26-6; Defs.' Ex. I, ECF No. 26-9; Defs.' Ex. L, ECF No. 26-12; Defs.' Ex. M, ECF No. 26-13; Defs.' Ex. O, ECF No. 30-1.

Defendants' email log is not probative of disruption because Defendants could not lay a foundation for the email log at the preliminary injunction hearing. ECF No. 47 at 1. In addition to the log, Defendants provide the Court with four emails, one of which originates from a parent in the Creston community and one of which suggest by its context it originates from a District community member. *See* Defs.' Ex. I, ECF No. 26-9 at 1, 3 (referencing "us parents of Creston"); Daughenbaugh Aff. ¶ 2, Defs.' Witness List, ECF No. 39-5. Defendants do not substantiate whether these emails, in fact, originated from parents in the District or community members. *See* Defs.' Ex. F, ECF No. 26-6; Defs.' Ex. I, ECF No. 26-9. Nor is there any information about the source of the other emails listed in the log. *Id.* Despite the call log, transcription of voicemails, and

15

voicemail recordings, Defendants do not identify how many of the telephone calls received originated from members of the Creston Community School District such that the calls could be considered internal disruption to the District's operations. *Cf. Melzer*, 336 F.3d at 199. An employee in Creston Community School District's IT department stated she could not identify how many of the calls originated from parents who had students in the District or who were a part of the Creston community generally. ECF No. 47 at 1. Upon review of the voicemails, only one of the 104 voicemail messages appears to be from a parent or student. Defs.' Ex. L, ECF 26-12 at 5. Similarly, Defendants do not identify whether the social media posts provided as evidence of disruption originate from members of the Creston Community School District. *See generally* Defs.' Ex. M, ECF No. 26-13; ECF No. 44 at 1; ECF No. 47 at 1. At this stage of proceedings, Defendants' evidence regarding the volume of calls, emails, and social media posts Defendants identify as responding to Crook's Facebook post is not sufficient to raise a question of disruption.

Defendants also provide evidence of parents threatening to pull their students from Crook's classroom or the District in general to support their disruption argument. ECF No. 48 at 8. Stender testified at the preliminary injunction hearing that "a half-dozen parents told him they would remove their children from Plaintiff's classroom or the District entirely if Plaintiff were permitted to continuing teaching." *Id.*; *see* ECF No. 44 at 1. Four parents of students in the District submitted affidavits expressing they would likely pull their students from Crook's class or the District if Crook continued to teach. *See* Daughenbaugh Aff. ¶ 10, ECF No. 39-5; Creighton Aff. ¶ 7, Defs.' Witness List, ECF No. 39-6; Strauss Aff. ¶ 10, Defs.' Witness List, ECF No. 39-7; Kramer Aff. ¶ 8, Defs.' Witness List, ECF No. 39-8. Defendants contend classroom movement "produces significantly distorted class rosters, placing additional burdens on the other teacher and increasing the student-teacher ratio for that class, impacting the amount of time that teacher could spend with each student" and removing students from the District will result in lost funding. ECF No. 48 at 8. Notably, the disruption analysis pertains to work performance, impairment of working

relationships, or interference with regular operations of the District. *See Rankin v. McPherson*, 483 U.S. 378, 388 (1987) (citing *Pickering*, 391 U.S. at 570–73).

Student movement between classrooms and out of the District is probative of disruption to the District's operations. However, four to six parents indicating a potential future intent to withdraw their children from a District of 1,300 students does not carry the day. *See* ECF No. 44 at 1; *compare Melzer*, 336 F.3d at 191 (holding fifty or sixty parents threatening to remove their children from school and 300 to 400 students staging an assembly in opposition to plaintiff's employment constitutes sufficient disruption) *with Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 727 (9th Cir. 2022) (holding "handful" of parent complaints insufficient to establish disruption). Further, Stender testified that the District will move students to another teacher under extreme circumstances and a parent of a student in the District indicated she "rearranged [her child's] schedule so he could have Ms. Crook for English." *Id.*; Scull Aff. ¶ 2, Pl.'s Witness List, ECF No. 38-11. At this stage of proceedings, Defendants' evidence related to student movement is not sufficient to raise a question of disruption.

The Court next addresses disruption as it relates to school safety and law enforcement presence on campus. Schools have an interest in protecting student safety. *See Riley's Am. Heritage Farms*, 32 F.4th at 726 (9th Cir. 2022). Defendants provide evidence of student discussion of possible acts of violence by others in retaliation for Crook's post. Driskell Aff. ¶¶ 16–18, ECF No. 39-1; *see* ECF No. 44 at 1. The Court notes no students testified or submitted affidavits as to the threat of violence; evidence about student discussion of the threat of violence relies solely on affidavits and testimony from administrators. *See generally* ECF No. 44 at 1; ECF No. 47 at 1. At least one parent removed their student from class because of the fear of violence. Creighton Aff. ¶ 10, ECF No. 39-6. Defendants contend "the threat [of violence] was credible enough to prompt increased law enforcement presence at the District's buildings, and required administrators to [sic] at the high school to sit in the hallways for a full week." ECF No. 48 at 7.

However, Driskell testified and both parties submitted evidence showing the threat of violence was deemed to be an unsubstantiated rumor. ECF No. 44 at 1; Defs.' Ex. J, ECF No. 26-10 at 4–5; Pl.'s Ex. 8, ECF No. 27-8 at 1 ("We are aware of a rumor circulating regarding an unsubstantiated threat of school violence. After thoroughly reviewing the matter, we have determined there is no credible threat to our schools. Out of an abundance of caution, we have asked local law enforcement to be present at school for the remainder of the day to provide additional support and reassurance."); Pl.'s Ex. 9 at 1, ECF No. 27-9 ("We are aware of a rumor circulating regarding possible school violence. After investigating, we have determined that there is no credible threat.").

Stender contacted Sheriff Bolton by text about providing a law enforcement presence at the school after the rumor had been deemed unsubstantiated. Pl.'s Ex. 14, ECF No. 27-14 at 17. Bolton testified he provided additional security to the elementary school out of an abundance of caution. ECF No. 47 at 1. The Court notes the elementary school campus does not include the high school where Crook teaches. *Id.* Bolton testified the Sherriff's Office did not do an independent threat assessment, but rather relied on Stender's reports about threats to the school when deciding to provide the patrol. *Id.* Defendants argue "the threat was credible enough to prompt increased law enforcement presence at the District's buildings"—resulting in disruption to the efficiency of school operations. ECF No. 48 at 7. But the law enforcement presence was a direct result of Stender's request for the law enforcement presence, not a result of any substantiated threat. *Id.* Defendants' evidence of law enforcement personnel on campus is not probative of disruption when Defendants caused the law enforcement personnel to be on campus.

Finally, the Court notes Crook was placed on administrative leave mere hours after posting to Facebook. ECF No. 44 at 1. While Defendants are not required to "allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action," a reasonable jury could conclude, based on Defendants' proffered

evidence, there was little evidence of actual disruption or a reasonable prediction of future disruption when Stender placed Crook on administrative leave and when he tendered her Notice of Recommendation to Terminate. *Connick*, 461 U.S. at 152. Additionally, Defendants are required to provide evidence "of how [Crook's speech] *actually* affected the government's ability to deliver 'public services'"—here, public education. *Melton,* 147 F.4th at 903 (emphasis in original). Stender testified the disruption to students' education derived from receiving instruction from a substitute teacher, which is solely a result of his decision to place Crook on administrative leave, not a result of her post. ECF No. 44 at 1. A math teacher at Creston Community High School testified the only interruption to her class occurred when Driskell came over the school's loudspeaker to announce an unsubstantiated threat of violence. *Id.* An employee who works in Creston Community School District's IT department testified the number of calls received by the District in the wake of Crook's Facebook post disrupted a planned training. ECF No. 47 at 1. However, she also testified she received the training one week later and did not have any personal knowledge of disruption to students' ability to learn in the classroom—the public service at issue in the disruption analysis. *Id.* At this stage of proceedings, Defendants' evidence regarding interruption to the District's ability to provide a public education is not sufficient to raise a question of disruption.

Therefore, the Court finds a likelihood of success on the merits as to a dearth of disruption or the reasonable prediction of disruption sufficient to move to *Pickering* balancing. A reasonable jury could conclude Defendants have not, "with specificity, demonstrate[d] the speech at issue created workplace disharmony, impeded the plaintiff's performance or impaired working relationships" to justify *Pickering* balancing. *Lindsey*, 491 F.3d at 900. *Cf. Henry v. Johnson*, 950 F.3d 1005, 1011 (8th Cir. 2020).

### 2.    Adverse Action

At this preliminary stage of litigation, Crook has provided sufficient evidence to support

her claim that Defendants took adverse action against her and the adverse action was motivated in part by the exercise of her First Amendment rights. *Cf. Scheffler*, 743 F.3d at 621. Crook may establish "adverse employment action" by showing she suffered "a material change in the terms or conditions" of her employment and that the change would "chill a person of ordinary firmness" from continuing to engage in activity protected by the First Amendment. *Grooms v. Privette*, 127 F.4th 730, 734 (8th Cir. 2025) (internal quotation marks and citation omitted). Crook's placement on administrative leave and the delivery of the Notice of Recommendation to Terminate her teaching contract to both Crook and the Board are sufficient evidence of a material change in her employment conditions that would chill a person of ordinary firmness from engaging in constitutionally protected speech. *See* Pl.'s Ex. 6, ECF No. 27-6 at 1–2; Pl.'s Ex. 10, ECF No. 27-10 at 1; *cf. Grooms*, 127 F.4th at 734. Further, Crook has sufficiently alleged her protected speech was the "substantial or motivating factor" in Stender's decision to place her on administrative leave and act on the Notice of Recommendation to Terminate. *Cf. Henry*, 950 F.3d at 1011. In the same message placing Crook on administrative leave the day of her Facebook post, Stender notified her he had "been made aware of a recent post" and "[a]t this time, you are placed on paid administrative leave." Pl.'s Ex. 6, ECF No. 27-6 at 1–2; *see* ECF No. 44 at 1. The investigative report given to Crook on September 15, 2025, explicitly references her Facebook comment and the purported effects of the comment. Defs.' Ex. H, ECF No. 26-8 at 1. Each of the nine reasons listed in the Notice of Recommendation to Terminate, delivered to both Crook and the Board, directly or indirectly references Crook's Facebook comment. Pl.'s Ex. 10, ECF No. 27-10 at 1. And the investigation conducted by Stender focused exclusively on her post. *See* ECF No. 44 at 1. The Court determines Crook is likely to succeed in showing Stender took adverse action against her in response to her exercise of her First Amendment rights.

Because Crook produced evidence she was engaged in a constitutionally protected activity, the adverse action against her would chill a person of ordinary firmness in continuing the activity,

and the adverse action was motivated at least in part by Crook's exercise of her First Amendment rights, the Court concludes Crook is likely to succeed on the merits of her First Amendment claim as to Stender.

## B.    Threat of Irreparable Harm

Success in demonstrating a threat of irreparable harm requires the "plaintiff[] seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 22 (2008) (emphasis in original). "A mere 'theoretical possibility' of future harm is not sufficient to warrant injunctive relief; Plaintiff[] must show it is a 'demonstrated probability.'" *Gomez v. Allbee*, 134 F. Supp. 3d 1159, 1181 (S.D. Iowa 2015) (quoting *McFarlin v. Newport Special Sch. Dist.,* 980 F.2d 1208, 1211 (8th Cir. 1992)). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). Defendants correctly argue termination and paid administrative leave are injuries that may be fully compensated through an award of damages and thus do not constitute irreparable harm. *See* ECF No. 48 at 2. However, Crook relies on other arguments and evidence to demonstrate irreparable harm.

Crook asserts Defendants' actions—Stender's decision to "investigat[e] her on allegations of misconduct," Stender's decision to "plac[e] her on paid administrative leave," and the threat of termination from the Notice of Recommendation to Terminate tendered to the District Board—"have placed her in fear of expressing her opinion on matters of public discourse." ECF No. 51 at 15. In her testimony at the preliminary injunction hearing, Crook attested to the same. *See* ECF No. 44 at 1. It is reasonable to infer Stender's investigation of Crook, decision to place her on administrative leave the same day she posted her Facebook message, and threat of termination through the Notice of Recommendation to Terminate places Crook's colleagues in fear of similar District actions should they engage in similar speech. *See* ECF No. 51 at 15;

Scull Aff. ¶ 9, ECF No. 38-11 (noting "some staff interpreted [Stender's] email," which advised staff to "'err on the side of caution' in their political expression" in regard to an unrelated incident, "as meaning they would face consequences if they expressed themselves online."). The chill on speech in this context is "more than a theoretical concern," *Minnesota Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 874 (8th Cir. 2012). Crook "continues to restrain [her] own speech under the threat that [Stender's adverse actions] will be enforced against [her]. This chill on [her] free speech rights—even if it results from a threat of enforcement rather than actual enforcement—constitutes irreparable harm." *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019) (citing *Elrod v. Burns*, 427 U.S. 347, 373–74 (1976)).

In addition to her free speech concerns, Crook additionally asserts "unique circumstances" justifying preliminary relief. *Gray v. Mallory*, No. 4:25-cv-01057-LPR, 2025 WL 3252427 at *3 (E.D. Ark. Nov. 21, 2025). Crook asserts "the District's directive . . . prohibiting her from freely attending school events or entering upon the District's grounds, is another dimension of the ongoing restraint on Crook's speech in absence of a preliminary injunction." ECF No. 51 at 15. Additionally, if the District were permitted to proceed with Crook's termination process based on Stender's Notice of Recommendation to Terminate, the District would be required to complete a reference detailing its investigation of Crook and the reasons for its investigation which would be available to prospective employers hiring through the Iowa Department of Education. *Id.* at 16. If Crook chose to resign in lieu of termination, Iowa Code § 22.7(11)(a)(5) mandates her personnel records lose their confidential status. *See id.,* Iowa Code § 22.7(11)(a)(5). Such requirements constitute additional evidence of irreparable harm that may not be fully compensated through damages. *Cf. Gen. Motors Corp.,* 563 F.3d at 319.

The Court concludes the threat of irreparable harm weighs in favor of Crook.

## C.    Balance of Harms and Public Interest

When a plaintiff seeks injunctive relief against the government, the public interest and

balancing of harm factors largely merge. *See Eggers*, 48 F.4th at 564. Under the balance of harm factor, the Court considers "the balance between th[e] harm [to the plaintiff] and the injury that the injunction's issuance would inflict on other interested parties." *Pottgen v. Mo. State High Sch. Activities Ass'n*, 40 F.3d 926, 928 (8th Cir. 1994). This factor requires examining the harm granting or denying the injunction poses to all parties to the dispute, as well as other interested parties. *See Dataphase*, 640 F.2d at 113–14; *accord Baker Elec. Coop., Inc. v. Chaske*, 28 F.3d 1466, 1473 (8th Cir. 1994). Under the public interest factor, the Court considers whether a preliminary injunction would serve the public interest. *Dataphase*, 640 F.2d at 113. The public interest necessarily includes protecting constitutional rights. *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008), overruled on other grounds by *Phelps-Roper v. City of Manchester*, 697 F.3d 678 (8th Cir. 2012) (en banc). Notably, "[w]hen a plaintiff has shown a likely violation of his or her First Amendment rights, the other requirements for obtaining a preliminary injunction are generally deemed to have been satisfied." *Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 870 (8th Cir. 2012) (quoting *Phelps-Roper v. Troutman*, 662 F.3d 485, 488 (8th Cir. 2011) (per curiam). The Court concludes the final two *Dataphase* factors favor issuance of a preliminary injunction.

Crook's placement on administrative leave and threatened termination in violation of the First Amendment must be balanced against the injury an injunction would inflict on Defendants. Defendants argue they would be "significantly prejudiced by this Court interfering with their ability to operate government services" if the Court grants an injunction. ECF No. 31 at 10. Defendants contend a preliminary injunction in this case defeats Defendants' decision to discharge an employee and impermissibly extends the employment of a potentially unqualified employee. *Id.* The Court finds the enforcement of First Amendment rights outweighs any potential employment harm to Defendants. Further, the public has a compelling interest in protection of First Amendment and other constitutional rights. *See Phelps-Roper*, 545 F.3d at 690 ("[I]t is

always in the public interest to protect constitutional rights.").

On balance, the relative hardships and public interest justify granting Crook's request for a preliminary injunction.

### D.    Remedy

In the motion for a preliminary injunction, Crook requests the Court "order Defendants to restore Crook to her teaching and other duties, prohibit Defendants from taking any discriminatory and/or retaliatory action in the future, award attorney fees and the costs of this action, and such other and further relief as is authorized and appropriate." ECF No. 12 at 4. However, Crook also acknowledges a preliminary injunction is an "extraordinary" remedy. ECF No. 51 at 14 (quoting *Morehouse Enters., LLC v. BATFE*, 78 F.4th 1011, 1016 (8th Cir. 2023)). In fashioning a remedy at a preliminary stage of proceedings, the Court considers whether "justice requires the court to intervene to *preserve the status quo* until the merits are determined." *United Indus. Corp.*, 140 F.3d at 1179 (citation omitted) (emphasis added).

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Camenisch*, 451 U.S. at 395. At the time Crook filed the motion for a preliminary injunction, Stender had already placed her on administrative leave and issued a Notice of Recommendation to Terminate. *See* ECF No. 12-1 at 5. Therefore, at the time Crook filed the motion for a preliminary injunction, the status quo included Crook's placement on administrative leave. *Cf. United Indus. Corp.*, 140 F.3d at 1179 (citation omitted). Reinstatement to her teaching position forms part of Crook's ultimate request for relief at the conclusion of the case; Crook requests, both in her original complaint and in the motion for preliminary injunction, reinstatement. *See* ECF No. 1 at 12–13 ("Crook respectfully requests . . . a permanent injunction, restraining Defendants from continuing her administrative leave"); ECF No. 12 at 4. A grant of Crook's request for ultimate relief is not warranted at this preliminary stage of proceedings. Because Crook was on administrative leave at the time of the filing of the motion

for preliminary injunction, the Court enters a preliminary injunction to preserve the status quo and goes no further. *Cf. United Indus. Corp.*, 140 F.3d at 1179 (citation omitted).

### E.    Bond

After considering the relevant factors, the court exercises its discretion to waive the bond requirement in Federal Rule of Civil Procedure 65(c). *See Rickland/Wilkin*, 826 F.3d at 1043.

## V.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff Melisa Crook's Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 12, is **GRANTED IN PART** and **DENIED IN PART**. Defendants Creston Community School District, the Board of Directors of Creston Community School District, Deron Stender, and Don Gee are enjoined from taking any adverse employment actions against Plaintiff Melisa Crook based on the Notice of Recommendation to Terminate prepared by Defendant Deron Stender. Defendants are further enjoined from taking any adverse employment actions against Plaintiff Melisa Crook based on her Facebook comment.

**IT IS FURTHER ORDERED** that Plaintiff Melisa Crook's request to be reinstated to her teaching position is denied at this time.

**IT IS SO ORDERED**.

Dated this 13th day of January, 2026.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE